UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMIE A.,

                                                                                           <u>DECISION AND ORDER</u>

                                Plaintiff,

                                                                                           20-CV-6315L

                         v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                Defendant.
_____

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner").[1] This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On October 27, 2015, plaintiff, then thirty-one years old, filed an application for supplemental security income benefits, alleging disability beginning October 27, 2015. (Administrative Transcript, Dkt. #8-2 at 15).

       Plaintiff's application was initially denied. She requested a hearing, which was held via videoconference on January 9, 2019 before Administrative Law Judge ("ALJ") Paul D. Barker, Jr. The ALJ issued an unfavorable decision on April 1, 2019. (Dkt. #8-2 at 15-30). That decision became the final decision of the Commissioner when the Appeals Council denied review on April 2, 2020. (Dkt. #8-2 at 1-3). Plaintiff now appeals.

---

[1] On or about July 9, 2021, Kilolo Kijakazi became the acting Commissioner of the Social Security Administration and is substituted for Andrew Saul as defendant in this action. *See* Fed. R. Civ. Proc. 25(d)(1).

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #10), and the Commissioner has cross moved (Dkt. #11) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, which reflect treatment for rheumatoid arthritis, migraine headaches, anxiety, depression, and post-traumatic stress disorder. The ALJ determined that these conditions together constituted a severe impairment not equaling a listed impairment. (Dkt. #8-2 at 17). The ALJ also noted that plaintiff had a history of periodic obesity, the effect of which the ALJ considered in determining plaintiff's limitations. The ALJ further observed that plaintiff's primary care providers had diagnosed her with fibromyalgia, and that consultative examiner Dr. Justine Magurno had identified eighteen positive "trigger points" in her examination. However, the ALJ declined to find that fibromyalgia was among plaintiff's severe impairments, because her rheumatoid arthritis furnished "an alternate explanation" for her pain. (Dkt. #8-2 at 18).

Applying the special technique for mental impairments, the ALJ found that plaintiff has moderate limitations in each of the four relevant functional areas: (1) understanding, remembering,

and applying information; (2) interacting with others; (3) concentration, persistence and pace; and (4) adapting and managing herself. (Dkt. #8-2 at 19).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with the ability to lift, carry, push and pull twenty pounds occasionally and ten pounds frequently. She can sit, or stand and walk, for up to six hours in an eight-hour workday. Plaintiff can no more than occasionally stoop, climb ramps and stairs, balance, kneel and crouch, and can never crawl or climb ladders, ropes, and scaffolds. She can frequently handle and finger. She must avoid concentrated exposure to extreme cold and vibrations, and must never be exposed to unprotected heights, or to moving, unprotected machinery. She can understand, remember, and carry out simple tasks, but not at an assembly line rate. She can make simple work-related decisions, occasionally interact with coworkers, supervisors, and the general public, and can tolerate no more than occasional changes in the work setting. (Dkt. #8-2 at 20-21).

When presented with this RFC as a hypothetical at the hearing, vocational expert Joseph A. Moisan testified that such an individual could perform the representative light, unskilled positions of grain picker, merchandise marker, and mail clerk. (Dkt. #8-2 at 29). The ALJ accordingly found plaintiff "not disabled."

### I.      The ALJ's Step Two Findings

The ALJ's decision described plaintiff's fibromyalgia diagnoses and the objective findings that supported it, but the ALJ determined that fibromyalgia was not a severe medically determinable impairment. Plaintiff argues that in making this finding, the ALJ ignored or misinterpreted the evidence of record and failed to apply the proper standard for determining

3

severe impairments, such that the resulting decision was not based on substantial evidence, and was the product of legal error.

At step two of the disability analysis, the ALJ must determine whether a claimant has one or more severe impairments that significantly limit his or her physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). The standard at step two is "*de minimis* and is meant only to screen out the weakest of claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Nonetheless, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d 253 at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause more than minimal limitations in [a claimant's] ability to perform work-related functions." *Windom v. Berryhill*, 2018 U.S. Dist. LEXIS 176372 at *7 (W.D.N.Y. 2018) (internal quotation marks and citations omitted).

Initially, the ALJ manifestly erred in finding that fibromyalgia was not a severe impairment, in light of the convincing evidence of record establishing all of the relevant factors (including a physician's diagnosis, evidence that claimant's symptoms met relevant diagnostic criteria, and the lack of inconsistency of the diagnosis with other evidence of record), and medical opinion evidence that plaintiff's complaints of fibromyalgia-related pain caused greater than minimal limitations on work-related functions. *See generally Rodriguez v. Commissioner*, 2021 U.S. Dist. LEXIS 113975 at *33-*35, *38 (S.D.N.Y. 2021) (ALJ erred in determining that

4

fibromyalgia was not a medically determinable impairment, where he focused, inter alia, on a failure to rule out other causes of the claimant's pain, which is not a relevant consideration).

However, regardless of the ALJ's erroneous finding that fibromyalgia was not a severe medically determinable impairment, that error was harmless and did not alter the ALJ's ultimate conclusion as to disability. Notably, notwithstanding his finding that plaintiff's fibromyalgia was not a severe impairment, the ALJ did not discount plaintiff's complaints of fibromyalgia *symptoms* (specifically, widespread pain), or decline to account for them: the ALJ simply concluded that those symptoms were instead attributable to plaintiff's severe impairment of rheumatoid arthritis. As plaintiff herself admitted to Dr. Murgano, the all-over body pain caused by both conditions made it impossible for her to distinguish between the two diagnoses in pinpointing the cause of her pain. (Dkt. #8-9 at 548). Further, the ALJ explicitly noted in discussing plaintiff's complaints of fibromyalgia-related pain that even though he did not find it to be a severe impairment, he had "considered [plaintiff's] complaints of pain and any associated mental disturbance in assessing the claimant's other medically determinable impairments." (Dkt. #8-2 at 18). *See Poles v. Berryhill*, 2018 U.S. Dist. LEXIS 49480 at *7 (W.D.N.Y. 2018)(citations omitted). Indeed, references to pain-related limitations appear throughout the ALJ's analysis.

It is clear that the ALJ accounted for the plaintiff's fibromyalgia symptoms, even if his failure to find that it was a severe impairment, and/or his attribution of those symptoms solely to rheumatoid arthritis, was erroneous. The error is therefore harmless, and remand solely for reconsideration of that issue would serve no purpose.

**II.     Treating Source Opinions**

Plaintiff also contends that the ALJ erred in his assessment of the medical opinions of plaintiff's treating care providers, internists Dr. John Alves and Dr. Heather Underhill.

Dr. Alves issued an initial opinion in September 2013, followed by a series of virtually identical opinions in October 2013, March 2014, October 2014, September 2016, and February 2017. Dr. Underhill authored two substantially similar opinions in September 2015 and February 2016. Dr. Alves and Dr. Underhill both indicated that plaintiff's fibromyalgia and polyarthritis, and the associated "pain and inflammation in her hands and her lower limbs," caused her to be "moderately limited" in walking, standing, using her hands, sustaining attention and concentration, and working at a consistent pace, and "very limited" in lifting, carrying, pushing, pulling, bending, and climbing. (Dkt. #8-7 at 356-37, 358-59, 360-61, 364-65, 366-67, 371-72, 374-74; Dkt. #8-8 at 419-20). On September 27, 2013, Dr. Alves wrote a brief note indicating that plaintiff's "Fibromyalgia and Rheumatoid Arthritis mak[e] it difficult to accomplish many jobs requiring constant walking, standing, or lifting. Employment requiring limited movement or sitting is recommended for her." (Dkt. #8-7 at 375.)

In two additional, lengthier opinions cosigned by Dr. Alves in July 2013 and July 2014, he stated that due to widespread "severe, daily" pain, muscle weakness, and a host of other symptoms, plaintiff cannot walk for more than 1 city block without pain, can sit for up to 15 minutes at a time for up to 4 hours in an 8-hour workday, can stand for up to 10 minutes at a time for less than 2 hours in an 8-hour workday, can occasionally lift 10 pounds and never lift 20 pounds, can rarely twist or climb stairs, can never stoop or crouch or climb ladders, requires the ability to change positions at will, must take frequent breaks throughout the day, cannot grasp with her hands or reach forward or overhead for more than 5% of the day, cannot perform fine finger manipulations for more than 50% of the day, and is likely to be off-task for more than 25% of the day and miss more than four days of work per month due to symptoms. (Dkt. #8-9 at 568-76).

The ALJ gave "minimal" weight to each of these eleven opinions, finding that although they were rendered by treating physicians, the extent of the opined limitations was inconsistent with certain objective findings in plaintiff's treatment notes and in Dr. Murgano's report, which indicated normal gait and strength. (Dkt. #8-2 at 22).

Pursuant to the applicable regulations, the opinion of a treating physician is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §§ 404.1527(d); 416.927(d).

When controlling weight is not given to a treating physician's opinion, the ALJ must explain his reasons for the weight that is assigned. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand")(internal quotations omitted). In so doing, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor may the ALJ "set his own expertise against that of a physician who [submitted an opinion or] testified." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998).

Here, the ALJ's decision to give only minimal weight to the opinions of Dr. Alves and Dr. Underhill was not sufficiently supported. Initially, the ALJ cited to just three references in treatment notes by Dr. Alves and Dr. Underhill in which normal strength or gait was observed. It

does not appear that plaintiff's strength, gait or dexterity were regularly measured by either physician, and the appearance of three sporadic findings over a course of treatment spanning several years does not lend overwhelming support to the ALJ's conclusion that "the examination notes of Dr. Alves and Dr. Underhill do not support their opinions." (Dkt. #8-2 at 25). Furthermore, to the extent that the ALJ "sense[d] that Dr. [Alves's or Dr. Underhill's RFC] reports may . . . [have been] in tension with [treatment] notes summarizing plaintiff's strength, mobility, and gait," the ALJ was obligated to seek clarification from those physicians, rather than simply rejecting their opinions nearly in toto. *Cahill v. Colvin*, 2014 U.S. Dist. ELXIS 178724 at \*49-\*50 (S.D.N.Y. 2014).

The ALJ's cavalier rejection of Dr. Alves's and Dr. Underhill's opinions as "inconsistent" with the medical evidence is particularly conspicuous, given that those opinions were largely consistent with *all* of the other exertional RFC opinions of record. Primary care physician Dr. Jessie Atkins, consulting examiner Dr. Magurno, and reviewing state agency medical consultant Dr. R. Reynolds, all opined that plaintiff had moderate or marked limitations in walking, sitting, standing, and engaging in certain postural functions. (Dkt. #8-9 at 548-52, 560-61, 615-16). Each was given no more than "partial" weight by the ALJ, based upon their alleged inconsistency with the same few observations of normal gait and strength the ALJ used to reject Dr. Alves's and Dr. Underhill's opinions.

In sum, the ALJ rejected the bulk of the exertional limitations that were consistently opined by each and every one of the treating, examining and reviewing physicians of record, citing only to scant objective findings that the ALJ interpreted as contradictory. "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [the ALJ] cannot simply selectively choose evidence in the record that supports his conclusions." *Gecevic v.*

*Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995) (*quoting Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). By rejecting the opinions of every medical source on the basis of a suspiciously-recurrent "inconsistency" with a few objective findings, without contacting any of those sources to determine whether there was a medical basis to explain the discrepancy, I find that the ALJ improperly substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Because the ALJ failed to apply the requisite standards in considering the medical opinions of record, and because the record does not necessarily provide "persuasive proof of disability," remand for further proceedings – and not for the calculation and payment of benefits – is the appropriate remedy. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #10) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #11) is denied, and this matter is remanded for further proceedings. On remand, the ALJ should reassess the evidence of record, contacting medical sources for clarification or soliciting additional consulting opinions where appropriate, and should render a new decision which reassesses plaintiff's severe impairments and the limitations posed thereby, provides a detailed explanation of the evidence of record supporting the ALJ's findings, identifies the weight given to each medical

opinion of record, applies the treating physician rule, and explains the reasons that specific opined limitations are adopted or rejected.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 10, 2021.